**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FREE GREEN CAN, LLC and** | ) | |
| **FGC FRANCHISES, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-5764** |
| | ) | |
| **GREEN RECYCLING ENTERPRISES,** | ) | |
| **LLC (a/k/a GREEN RECYCLING** | ) | |
| **ENTERPRISES, INC.),** | ) | |
| **ASLAN FINANCIAL GROUP, INC.,** | ) | |
| **EDWARD JARZOBSKI, DEDRIC GILL,** | ) | |
| **and ROBB JORGENSEN,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs Free Green Can, LLC ("Free Green Can") and FGC Franchises LLC ("FGC Franchises") by their attorneys, and as and for their Complaint against defendants Green Recycling Enterprises, LLC (a/k/a Green Recycling Enterprises, Inc.) ("GRE"), Aslan Financial Group, Inc. ("Aslan"), Edward Jarzobski, Dedric Gill and Robb Jorgensen state as follows:

## NATURE OF THE ACTION

1.     This is an action for preliminary and permanent injunctive relief and damages brought to enjoin and to seek redress for GRE's, Jarzobski's, Gill's, and Jorgensen's (collectively, the "GRE Defendants") unauthorized and unlawful use of Free Green Can's proprietary marks, including its federally registered trademarks and the GRE Defendants' unfair competition with Free Green Can and FGC Franchises.  Free Green Can and FGC Franchises

1

have been and, unless the GRE Defendants' continuing misconduct is enjoined, will continue to be irreparably harmed by the GRE Defendants' infringement and unfair competition.

2.     In addition, Free Green Can seeks a) declaratory relief that the franchise between Free Green Can and the GRE Defendants is valid and enforceable, b) specific performance of the franchise agreement between Free Green Can and the GRE Defendants and c) injunctive relief to enjoin for the GRE Defendants' claims that no franchise agreement exists between Free Green Can and the GRE Defendants while continuing to use Free Green Can's trademarks and other proprietary information to operation their business.

3.     Free Green Can further seeks an award of damages to compensate for (a) Aslan's and the GRE Defendants' breaches of contract and (b) Aslan's breach of fiduciary duty.

## PARTIES

4.     Plaintiff Free Green Can, formerly known as Green Can Products, LLC, is an Illinois limited liability company with its principal place of business in Sugar Grove, Illinois. None of the members of Free Green Can is a citizen or resident of the State of Nebraska.

5.     Plaintiff FGC Franchises is an Illinois limited liability company with its principal place of business in Sugar Grove, Illinois. None of the members of FGC Franchises is a citizen or resident of the State of Nebraska.

6.     Free Green Can originally conceived of and developed the novel business concept, described more fully below at ¶¶ 14-15, of providing dual purpose recycle/trash containers to public and private institutions and selling to third parties the rights to advertise on those containers. This business concept – known as a Free Green Can business – is now franchised across the country by Free Green Can's affiliate, plaintiff FGC Franchises, which was established for the purpose of franchising the Free Green Can business concept. Free Green Can

is an approved supplier of dual purpose recycle/trash containers to franchised Free Green Can businesses. Free Green Can is the owner of registered trademarks licensed and used in connection with the operation of franchised Free Green Can businesses. Free Green Can licenses its registered trademarks to FGC Franchises, who is the sub-licensor of the registered trademarks to the Free Green Can franchisees.

7.      Defendant GRE is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska. Each of GRE's members is a citizen and resident of the State of Nebraska.

8.      Defendant Aslan is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Aslan holds itself out to the public as a company affording businesses and individuals with "access to unique and qualified business programs . . . designed to provide stability, safety and help Americans and American business achieve their financial goals," and providing "that needed insight to (sic) retirement and business growth in today's volatile financial markets." As described more fully below at ¶¶ 21-23, Free Green Can turned to Aslan for help securing financing to develop its business, and Aslan instead stole the business concept that Free Green Can disclosed to it.

9.      Defendant Edward Jarzobski is a Nebraska citizen and resident. Jarzobski is the president, treasurer, secretary and a director of Aslan, a member of GRE, and holds himself out as GRE's "Secretary" and "Treasurer."

10.     Defendant Dedric Gill is a Nebraska citizen and resident, and a member of GRE. Gill also holds himself out as "President" of GRE.

11.     Defendant Robb Jorgensen is a citizen and resident of Nebraska, and a member of GRE. Jorgensen also holds himself out as a "Partner" at GRE.

3

## JURISDICTION AND VENUE

12.     The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including Acts of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.  The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that this is a civil action between citizens of different States and wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and the October 7, 2009 franchise agreement to which Free Green Can and the GRE Defendants are parties, out of which certain of the claims asserted herein arise, and to which all of the claims asserted herein relate, specifies that venue in a state or federal court in Chicago, Illinois is exclusive.

## The Free Green Can Business Concept

14.     The Free Green Can business involves the placement of dual purpose recycle/trash containers in conspicuous, heavily-trafficked locations (known as "Host Sites") such as stadiums, music venues, college cafeterias, and the like, and the sale to "Sponsors" of advertising to be displayed on the containers.  Host Sites are encouraged to participate in the program because it provides a cost-free trash and recycling solution, and a share of revenue generated by the sale of advertising to Sponsors.  Sponsors are encouraged to purchase

advertising panels because of the placement of containers in conspicuous, high-trafficked locations.

15.    The Free Green Can business was originally conceived and developed by Free Green Can.  Over the course of several years Free Green Can developed and fine-tuned the methods, techniques and procedures for implementing and operating the business, including the identification of suitable Host Sites for placement of containers, and effective methods of marketing and selling advertising to Sponsors.

## The Free Green Can Trademarks

16.    To identify the source, origin and sponsorship of its brand of dual purpose recycle/trash containers, and to distinguish its business from those established, made, offered and sold by others, Free Green Can and FGC Franchises, as well as authorized Free Green Can franchisees, have extensively used certain trademarks, service marks, trade names, logos, emblems and indicia or origin, including the Free Green Can service mark (Reg. No. 3807049, registered June 22, 2010) and the Free Green Can mark (Application No. 77715538, filed April 16, 2009, supplemental reg. July 21, 2010) (collectively, the "Free Green Can Marks").

17.    The Free Green Can Marks are registered on the Principal or the Supplemental Register of the United States Patent and Trademark Office.  The registrations continue in full force and effect.

18.    Free Green Can has given notice to the public of their registration as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized licensees remain the exclusive users of the Free Green Can Marks.

5

19.     Free Green Can and FGC Franchises have continuously used the Free Green Can Marks in interstate commerce in connection with the promotion, sale and franchising of the Free Green Can business throughout the United States.

20.     Free Green Can and FGC Franchises have extensively advertised and promoted the Free Green Can business concept throughout the United States, and through various media. As a result of such efforts and the considerable money spent in connection therewith, the services offered by Free Green Can and its authorized licensees under the Free Green Can Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

**Free Green Can's Agreements with Aslan**

21.     Free Green Can and Aslan met on two separate occasions during the summer of 2009 to discuss potential financing and investment opportunities available to Free Green Can. On August 26, 2009, Free Green Can entered into a consulting agreement with Aslan (the "Consulting Agreement").   In connection with the Consulting Agreement, and ostensibly to enable Aslan to develop an "Investor Packet" to be used by Aslan to solicit financing from prospective lenders, Aslan required that Free Green Can disclose to Aslan "all necessary documentation, reports, applications, summaries and such other documents . . . as may be requested by [Aslan]," and to "cooperate in securing, creating, or modifying any additional documents that may be requested by a lender in the review process. "

22.     In recognition of the proprietary and confidential nature of the materials and information that Aslan required Free Green Can to disclose, the Consulting Agreement expressly refers to such materials and information as "Confidential Information," and Aslan expressly acknowledged that "the wrongful disclosure of [such] Confidential Information disclosed in

accordance with this Agreement may result in harm that is not compensable totally by monetary damages." The Consulting Agreement expressly contemplates entry of a "temporary restraining order and/or an injunction" to protect against, among other things, wrongful disclosure of Confidential Information disclosed by Free Green Can to Aslan under the Consulting Agreement.

**Aslan's Wrongful Disclosure of Free Green Can's Confidential Information**

23.     Consistent with Aslan's requirements under the Consulting Agreement and requests, Free Green Can disclosed to Aslan as its financing agent virtually every aspect of the Free Green Can business that it had developed. Among other things, Free Green Can provided Aslan with Confidential Information, including its proprietary business plan that included marketing analysis, cost projections, and business strategies.

24.     Notwithstanding the Consulting Agreement and Aslan's obligations thereunder to assist Free Green Can to secure financing to further develop and grow its business, Aslan approached Free Green Can and proposed instead to acquire what it referred to as franchise rights to the Free Green Can business in Nebraska. In the course of soliciting Free Green Can to sell to it such franchise rights, Aslan inquired whether Free Green Can had developed the disclosure and other documents necessary to offer and sell franchises consistent with applicable state and federal laws and regulations. Free Green Can specifically informed Aslan that it was unaware of such requirements, and that it had not previously sold a franchise to any person.

25.     Aslan nevertheless encouraged Free Green Can to sell to it the franchise rights to the Free Green Can concept for the entire State of Nebraska and offered to pay Free Green Can an initial fee and to share ongoing revenues with Free Green Can in exchange for such rights.

7

26.     In violation of the Consulting Agreement, Aslan disclosed the Confidential Information given to it by Free Green Can, including marketing analysis, cost projections, and business strategies, to Aslan's affiliates, the GRE Defendants, and the GRE Defendants used that Confidential Information in negotiating the terms of its franchise agreement with Free Green Can.

27.     Free Green Can at all times fully performed all of its obligations under the Consulting Agreement.

## The Franchise Agreement

28.     On October 7, 2009, Free Green Can (as Green Can Products, LLC), on the one hand, and the GRE Defendants, on the other, entered into a written franchise agreement (the "Franchise Agreement") pursuant to which Free Green Can authorized the GRE Defendants to operate a Free Green Can business within the State of Nebraska.  Consistent with the fact that it was Aslan and the GRE Defendants who solicited Free Green Can to grant such rights, the Franchise Agreement recited on its face that the GRE Defendants "[have] requested a [f]ranchise to operate a [Free Green Can business]."

29.     Due to Aslan's disclosure of the Confidential Information to the GRE Defendants in violation of the Consulting Agreement, the GRE Defendants were able to negotiate a reduced price of the proprietary dual purpose recycle/trash containers sold to them under the Franchise Agreement.  The GRE Defendants paid Free Green Can the initial fee owed under the Franchise Agreement of $125,000, which included 100 of Free Green Can's proprietary dual purpose recycle/trash containers, and an additional $40,000 for 100 additional proprietary dual purpose recycle/trash containers, which were delivered to the GRE Defendants in May and June 2010.

30.     Under the Franchise Agreement, the GRE Defendants agreed that:

8

a. the GRE Defendants' had the right to use Free Green Can's confidential and proprietary information and trade secrets (collectively, the "Franchise Confidential Information") solely in connection with the operation of their Free Green Can franchise in Nebraska;

b. the GRE Defendants would "maintain absolute secrecy" of the Franchise Confidential Information "during and after the term of" the Franchise Agreement;

c. the GRE Defendants would not use the Franchise Confidential Information "in any way other that the operation of [the Free Green Can business] under [the] Franchise Agreement," and that any unauthorized use of the Franchise Confidential Information "would be an unfair method of competition" with Free Green Can;

d. the GRE Defendants' "interest in the [Free Green Can Marks] and Copyrighted Materials is solely that of a Franchisee…" and that Free Green Can was the owner of the Free Green Can Marks and other copyrighted material;

e. the GRE Defendants would "not use any element of the [Free Green Can business] in connection with the operation of any establishment or enterprise other than the [Free Green Can business], and will promptly discontinue use of the [Free Green Can business] upon the expiration or termination of the Franchise";

f. the GRE Defendants would pay "all advertising fees [and related production fees] . . . directly to" Free Green Can and that, with respect to any advertising secured by the GRE Defendants, would pay 20% of the advertising fees to Free Green Can";

9

g. the GRE Defendants would "accurately report the placement of [proprietary dual purpose recycle/trash containers] and solicitation of advertising to [Free Green Can]" and "provide to [Free Green Can] on a quarterly basis a summary of the placement of Free Green Cans and solicitation of advertising."

h. the GRE Defendants would allow Free Green Can to inspect the GRE Defendants' books and records as Free Green Can had the right to do so under the Franchise Agreement; and

i. that the GRE Defendants would provide to Free Green Can their financial statements within 45 days after the end of each calendar year.

### The GRE Defendants' Breaches of the Franchise Agreement

31.     The GRE Defendants have placed the proprietary dual purpose recycle/trash containers received from Free Green Can at Host Sites in downtown Omaha, Nebraska and have secured advertising commitments from Sponsors such as ConAgra Foods, Union Pacific, Atchley Ford, CBS Home Real Estate, Miller Electric, SAC Federal Credit Union and the DLR Group.  On information and belief, the GRE Defendants have also currently placed proprietary dual purpose recycle/trash containers received from Free Green Can at the Omaha Sports Complex, the Ultimate Baseball Academy, and at Ralston Public Schools, as well as special events such as Taste of Omaha, Taste of West Omaha, and the 2010 Special Olympics Nebraska. The GRE Defendants have sold advertising on the four panels of the proprietary dual purpose recycle/trash containers and have generated revenue from such advertising.  Notwithstanding their obligations to do so, the GRE Defendants have failed to pay any advertising fees to Free Green Can.

32. The GRE Defendants have failed to provide information or reports on their placement of the Free Green Can's proprietary dual purpose recycle/trash containers, their solicitation of advertising, and their financial statements, despite their obligations to do so and Free Green Can's repeated requests. The GRE Defendants have also failed to permit Free Green Can to inspect their books and records.

33. As discussed more fully below at ¶¶ 40-47, the GRE Defendants have used the Free Green Can Marks in an effort to hold themselves out as having the right to sell franchises, and provided a proprietary dual purpose recycle/trash container to Green Mavericks, LLC, a Minnesota limited liability company ("Green Mavericks").

34. By written notice dated July 21, 2010, Free Green Can advised the GRE Defendants that their failures to pay amounts due under the Franchise Agreement, to report the placement of proprietary dual purpose recycle/trash containers and the solicitation of advertising, to submit financial statements, and to permit Free Green Can to inspect their books and records, constituted "Events of Default" and were grounds for termination under the Franchise Agreement.

35. In response to Free Green Can's demands, and having themselves solicited the sale of the franchise and after having operated under the Franchise Agreement for nearly a year, on July 27, 2010 the GRE Defendants claimed for the first time that the Franchise Agreement was null and void because Free Green Can allegedly never registered its franchise with the Nebraska Department of Banking. The GRE Defendants further claimed that they have the right to give the proprietary dual purpose recycle/trash containers to anyone they choose and to conduct "all recycling business whenever and wherever [they] deem[] appropriate."

36.     By written notice dated August 5, 2010, Free Green Can denied the GRE Defendants' allegations, pointed out that in fact the Franchise Agreement was sold in compliance with the Nebraska Seller-Assisted Marketing Plan Act, and again demanded the GRE Defendants' compliance with the Franchise Agreement.

37.     Notwithstanding their obligations under the Franchise Agreement and Free Green Can's written demands, the GRE Defendants have refused to comply with their obligations under the Franchise Agreement.

38.     The GRE Defendants continue to use the Free Green Can Marks, copyrighted information, and other elements of the Free Green Can business, including Free Green Can's proprietary dual purpose recycle/trash containers, to operate their business.

39.     Free Green Can at all times fully performed all of its obligations under the Franchise Agreement.

### The GRE Defendant's Infringement and Unfair Competition

40.     On March 17, 2010, the GRE Defendants provided Free Green Can a draft distribution agreement under which the GRE Defendants proposed to grant certain rights to operate a Free Green Can business in the State of Minnesota to Green Mavericks, in exchange for a share of the advertising fees.

41.     Free Green Can communicated to the GRE Defendants that they were not authorized to enter into an agreement to operate a Free Green Can business outside of the State of Nebraska, and that Free Green Can did not approve of any such agreement.

42.     Free Green Can informed the GRE Defendants that they were not authorized under the Franchise Agreement or otherwise to license anyone's use of the Free Green Can Marks.

12

43.     Although Free Green Can never granted the GRE Defendants the right to license the Free Green Can Marks, the GRE Defendants used the Free Green Can Marks in an effort to hold themselves out as having the right to sell franchises, and provided a proprietary dual purpose recycle/trash container to Green Mavericks.

44.     By written notices dated July 21, 2010 and August 5, 2010, Free Green Can informed the GRE Defendants that their actions violated federal and state trademark laws, and demanded that they terminate their relationship with Green Mavericks in relation to the operation of a Free Green Can business and the use of the Free Green Can Marks.

45.     The GRE Defendants have not ceased infringing the Free Green Can Marks.

46.     The GRE Defendants' actions in using the Free Green Can Marks in an effort to hold themselves out as having the right to sell franchises, and providing a proprietary dual purpose recycle/trash container to Green Mavericks, were committed with knowledge of Free Green Can's and FGC Franchises' rights in the Free Green Can Marks and for the express purpose of trading upon Free Green Can's and FGC Franchises' goodwill in the Free Green Can Marks and to dilute the Free Green Can Marks and to create consumer confusion as to the affiliation and sponsorship of the Green Mavericks business, which directly benefits the GRE Defendants, by misleading the public to believe that the business in Minnesota is an authorized Free Green Can franchise when it is not.

47.     By reason of the GRE Defendants' unauthorized and unlicensed use of the Free Green Can Marks, the public is likely to be confused and misled to believe that the business operated by Green Mavericks in Minnesota is an authorized Free Green Can franchise.  As a result, any consumer or customer dissatisfaction with the business operated by Green Mavericks in Minnesota is likely to be attributed to Free Green Can and FGC Franchises, resulting in

damage to Free Green Can's and FGC Franchises' business reputation and to the goodwill associated with the Free Green Can Marks.

**COUNT I- TRADEMARK INFRINGEMENT**
**(As to the GRE Defendants)**

48.     Free Green Can and FGC Franchises repeat and reallege ¶¶ 1 through 47 of their Complaint as and for this ¶ 48, as if fully set forth herein.

49.     The GRE Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Free Green Can Marks, and are likely to cause consumer confusion or mistake and to deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

50.     The GRE Defendants' infringement was knowing and willful.

51.     As a direct and proximate result of the GRE Defendants' infringement, Free Green Can and FGC Franchises have been and are likely to be substantially injured in their business, including their business reputation and the goodwill associated with the Free Green Can Marks, resulting in lost revenues and profits, and diminished goodwill.

52.     Free Green Can and FGC Franchises have no adequate remedy at law because the Free Green Can Marks are unique and represent to the public Free Green Can's and FGC Franchises' identity, reputation, and goodwill, such that damages alone cannot fully compensate Free Green Can and FGC Franchises for the GRE Defendants' misconduct.

53.     Unless enjoined by the Court, the GRE Defendants will continue to infringe the Free Green Can Marks, to Free Green Can's and FGC Franchises' irreparable injury.  This threat of future injury to Free Green Can's and FGC Franchises' business, identity, goodwill and reputation requires injunctive relief to prevent the GRE Defendants' continued infringement of

the Free Green Can Marks, and to ameliorate and mitigate Free Green Can's and FGC Franchises' injuries.

## COUNT II- UNFAIR COMPETITION
### (As to the GRE Defendants)

54.     Free Green Can and FGC Franchises repeat and reallege ¶¶ 1 through 53 of their Complaint as and for this ¶ 54, as if fully set forth herein.

55.     The GRE Defendants' acts, practices, and conduct constitute an infringing use of the Free Green Can Marks, and are likely to cause consumer confusion or mistake and to deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

56.     The GRE Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the sponsorship, affiliation, connection, or association of the parties, and to misrepresent the nature, characteristics, qualities, or geographic origin of the business operated by Green Mavericks in Minnesota, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a).

57.     The GRE Defendants' acts were knowing and willful.

58.     As a direct and proximate result of the GRE Defendants' unfair competition, Free Green Can and FGC Franchises have been and are likely to be substantially injured in their business, including their business reputations and the goodwill associated with the Free Green Can Marks, resulting in lost revenues and profits, and diminished goodwill.

59.     Free Green Can and FGC Franchises have no adequate remedy at law because the Free Green Can Marks are unique and represent to the public Free Green Can's and FGC

Franchises' identity, reputation, and goodwill, such that damages alone cannot fully compensate Free Green Can's and FGC Franchises for the GRE Defendants' misconduct.

60.     Unless enjoined by the Court, the GRE Defendants will continue to compete unfairly with Free Green Can and FGC Franchises, to Free Green Can and FGC Franchises' irreparable injury.  This threat of future injury to Free Green Can's and FGC Franchises' business, identity, goodwill, and reputation requires injunctive relief to prevent the GRE Defendants' continued unfair competition, and to ameliorate and mitigate Free Green Can's and FGC Franchises' injuries.

## COUNT III- DECLARATORY JUDGMENT
### (As to the GRE Defendants)

61.     Free Green Can repeats and realleges ¶¶ 1 through 60 of its Complaint as and for this ¶ 61, as if fully set forth herein.

62.     An actual and justiciable controversy exists between the parties concerning the validity and enforceability of the Franchise Agreement.

63.     Pursuant to 28 U.S.C. 2201 *et. seq.,* this Court has the jurisdiction and power to declare the rights and other legal relations of any interested party seeking such declaration.

64.     Free Green Can is entitled to a judgment declaring that the Franchise Agreement is valid and enforceable, that it was not sold in violation of the Nebraska Seller-Assisted Marketing Plan Act, and that the GRE Defendants are barred from claiming otherwise and from refusing on that basis to perform their contractual obligations thereunder.

65.     The GRE Defendants have waived any right to rescind the Franchise Agreement by operating under the Franchise Agreement since October 2009.

66.     Under 28 U.S.C. 2202, this Court may enter further necessary and proper relief based on a declaratory judgment.  Free Green Can is entitled to damages for the GRE Defendants' breaches of the Franchise Agreement and is entitled to specific performance of the provisions of the Franchise Agreement.

### COUNT IV- BREACH OF FRANCHISE AGREEMENT
**(Failure to Pay - as to the GRE Defendants)**

67.     Free Green Can repeats and realleges ¶¶ 1 through 66 of its Complaint as and for this ¶ 66, as if fully set forth herein.

68.     The GRE Defendants' failure to pay amounts due under the Franchise Agreement constitutes a material breach of the Franchise Agreement.

69.     As a direct and proximate result of the GRE Defendants' breach, Free Green Can has been damaged in an amount to be proven at trial.

### COUNT V- SPECIFIC PERFORMANCE
**(Violation of Reporting and Inspection Obligations under the Franchise Agreement- as to the GRE Defendants)**

70.     Free Green Can repeats and realleges ¶¶ 1 through 69 of its Complaint as and for this ¶ 70, as if fully set forth herein.

71.     The GRE Defendants' failures to report the placement of Free Green Can's proprietary dual purpose recycle/trash containers and the solicitation of advertising, their failure to submit financial statements, and their failure to permit Free Green Can to inspect their books and records, constitute material breaches of the Franchise Agreement.

72.     Free Green Can has no adequate legal remedy for the GRE Defendants' breaches, as monetary damages cannot adequately compensate Free Green Can for the harm caused by the GRE Defendants' misconduct.

73.     Free Green Can is entitled to an order of specific performance of the GRE Defendants' obligations under the Franchise Agreement to report the placement of Free Green Can's proprietary dual purpose recycle/trash containers and the solicitation of advertising, to submit financial statements, and to permit Free Green Can to inspect their books and records.

## COUNT VI- SPECIFIC PERFORMANCE
### (Violation of Franchise Territory, Confidentiality Obligations and Use of Intellectual Property Obligations under the Franchise Agreement- as to the GRE Defendants)

74.     Free Green Can repeats and realleges ¶¶ 1 through 73 of its Complaint as and for this ¶ 74, as if fully set forth herein.

75.     The GRE Defendants' actions in using the Free Green Can Marks in an effort to hold themselves out as having the right to sell franchises, and providing a dual purpose recycle/trash container to Green Mavericks, constitute material breaches of the Franchise Agreement.

76.     Free Green Can has no adequate legal remedy for the GRE Defendants' breaches, as monetary damages cannot adequately compensate Free Green Can for the harm caused by the GRE Defendants' misconduct.

77.     Free Green Can is entitled to an order of specific performance of the GRE Defendants' confidentiality obligations, intellectual property obligations, and territory restrictions under the Franchise Agreement.

## COUNT VII - INJUNCTION
### (As to the GRE Defendants)

78.     Free Green Can repeats and realleges ¶¶ 1 through 77 of its Complaint as and for this ¶ 78, as if fully set forth herein.

18

79.     Under the terms of the Franchise Agreement, the GRE Defendants may not use Franchise Confidential Information, the Free Green Can Marks and copyrighted materials or "any element" of the Free Green Can business upon the expiration or termination of the Franchise Agreement.

80.     Despite their belated claim that the Franchise Agreement is no longer in force, the GRE Defendants continue to use the Free Green Can Marks and copyrighted materials and other elements of the Free Green Can business, including Free Green Can's proprietary dual purpose recycle/trash containers.

81.     The GRE Defendants' actions have caused, and unless enjoined, will continue to cause, Free Green Can to suffer irreparable harm, including injury to its business and reputation, as the GRE Defendants are operating a Free Green Can business while claiming that no Franchise Agreement exists.

82.     Unless enjoined by the Court, the GRE Defendants will continue to use the Free Green Can Marks and copyrighted materials and other elements of the Free Green Can business while claiming that no Franchise Agreement exists to Free Green Can's irreparable harm.

### COUNT VIII- BREACH OF CONSULTING AGREEMENT
### (As to Defendant Aslan)

83.     Free Green Can repeats and realleges ¶¶ 1 through 82 of its Complaint as and for this ¶ 83, as if fully set forth herein.

84.     Aslan's unauthorized disclosure of Confidential Information to the GRE Defendants constitutes a material breach of the Consulting Agreement.

85.     As a direct and proximate result of Aslan's breach, Free Green Can has been damaged in an amount to be proven at trial.

## COUNT IX- BREACH OF FIDUCIARY DUTY
### (As to Aslan)

86.     Free Green Can repeats and realleges ¶¶ 1 through 85 of its Complaint as and for this ¶ 86, as if fully set forth herein.

87.     Aslan was the financing agent for Free Green Can, and as financing agent, received Confidential Information.

88.     As Free Green Can's financing agent, Aslan owed and owes fiduciary duties to Free Green Can.

89.     Aslan's unauthorized disclosure of Confidential Information to the GRE Defendants constitutes a breach of Aslan's fiduciary duty to Free Green Can.

90.     As a direct and proximate result of Aslan's breach of fiduciary duty, Free Green Can has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Free Green Can, LLC and FGC Franchises, LLC respectfully pray for the following relief against defendants:

A.     A preliminary and permanent injunction enjoining the GRE Defendants, and their agents, servants and employees, and all persons in active concert or participation with them, from:

1.   Using the Free Green Can Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Free Green Can Marks without Free Green Can's authorization;

2.   Otherwise infringing the Free Green Can Marks;

3.   Unfairly competing with Free Green Can and FGC Franchises in any manner; and

       4.   From claiming that the Franchise Agreement is void and unenforceable while continuing to use the Free Green Can Marks, copyrighted material and other elements of the Free Green Can business;

B.     An order requiring the GRE Defendants file with the Court and to serve upon Free Green Can's and FGC Franchises' counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

C.     A declaratory judgment under 28 U.S.C. 2201 that the Franchise Agreement is valid and enforceable, that it was not sold in violation of the Nebraska Seller-Assisted Marketing Plan Act, and that the GRE Defendants are barred from claiming otherwise and from refusing on that basis to perform their contractual obligations thereunder;

D.     An order requiring the GRE Defendants to specifically perform their obligations under the Franchise Agreement including their obligations:

       1.   to report the placement of proprietary dual purposes recycle/trash containers and the solicitation of advertising to Free Green Can;

       2.   to submit financial statements to Free Green Canl;

       3.   to allow Free Green Can to inspect their books and records; and

       4.   their obligations related to the franchise territory, confidentiality and the use of intellectual property;

E.     An order requiring that the GRE Defendants account and pay over to Free Green Can and FGC Franchises all gains, gross profits and advantages derived by them as a result of their infringement of the Free Green Can Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.     An order requiring that the GRE Defendants pay to Free Green Can and FGC Franchises such damages as Free Green Can and FGC Franchises have sustained

by reason of their trademark infringement and unfair competition, and that, because of the willful nature of their infringement, the Court enter judgment for Free Green Can and FGC Franchises for three times the amount of those damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G.      Damages in an amount to be proven at trial for the damage caused to Free Green Can by the GRE Defendants' breach of the Franchise Agreement;

H.      Damages in an amount to be proven at trial for the damage caused to Free Green Can by Aslan's breaches of the Consulting Agreement;

I.      Damages in an amount to be proven at trial for the damage caused to Free Green Can by Aslan's breach of fiduciary duty;

J.      An award of the costs and expenses, including reasonable attorneys' fees incurred by Free Green Can and FGC Franchises in connection with this action; and

K.      Such other and further relief as the Court deems just and proper.


Dated: September 10, 2010

                                        Respectfully submitted,

                                        **FREE GREEN CAN, LLC and**
                                        **FGC FRANCHISES LLC**

                                        By:  _/s/ Fredric A. Cohen_____


                                        Fredric A. Cohen
                                        Jessica R. Blaemire
                                        Cheng Cohen LLC
                                        311 N. Aberdeen, Suite 400
                                        Chicago, Illinois 60607
                                        312-243-1717
                                        312-957-8367
                                        fredric.cohen@chencohen.com
                                        jessica.blaemire@chengcohen.com