# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FREE GREEN CAN, LLC and <br> FGC FRANCHISES, LLC, <br> <br> Plaintiffs, <br> <br> v. <br> <br> GREEN RECYCLING ENTERPRISES, <br> LLC (a/ka GREEN RECYCLING <br>     ENTERPRISES, INC.), ASLAN <br> FINANCIAL GROUP, INC., EDWARD <br> JARZOBSKI, DEDRIC GILL, and ROBB <br> JORGENSEN, <br> <br> Defendants. | Case No. 10-cv-5764 <br> <br> Judge Sharon Johnson Coleman <br> <br> Magistrate Judge Arlander Keys |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion by Defendants Dedric Gill, Robb Jorgensen, Edward Jarzobski and Brian Gubbels (collectively "Moving Defendants" or "Individual Defendants") to dismiss the Plaintiffs', Free Green Can, LLC and FGC Franchises, LLC (collectively "Plaintiffs"), Second Amended Complaint for its failure to state a claim. Individual Defendant Gubbels also seeks to dismiss the complaint for lack of personal jurisdiction. (Dkt. No. 102.) In the second amended complaint, Plaintiffs assert trademark infringement (count I), unfair competition (count II), breach of franchise agreement (count IV) and specific performance of the franchise agreement (counts V and VI) against Defendants Green Recycling Enterprises, LLC, ("GRE"), Edward Jarzobski, Dedric Gill, Robb Jorgensen, and Brian Gubbels (collectively the "GRE Defendants"). Plaintiffs also seek a declaratory judgment finding the franchise agreement valid and enforceable (count III) and to enjoin the GRE Defendants from using Plaintiffs' trademarks and copyrighted material (count VII). Lastly, plaintiffs assert a violation

of the Illinois Trade Secret Act (count VIII) against the GRE Defendants.[1]  For the following reasons, the Court grants the Moving Defendants' motion.

**FACTS**

The relevant factual allegations in the second amended complaint, which the Court must accept as true for present purposes, are as follows:  Plaintiff Free Green Can LLC ("Free Green Can") developed the business concept of providing dual purpose recycle and trash bins to public and private institutions and selling advertising rights on those bins to third-parties.  (Sec. Am. Compl. ¶ 6.)  Free Green Can envisioned the placement of the bins in heavily-trafficked "host site" locations.  (*Id.* at ¶ 19.)  Host sites would receive a cost-free trash and recycling solution and earn a share of the advertising revenue.  (*Id.*)  Free Green Can is the owner of registered trademarks licensed and used in connection with the Free Green Can operation.  (*Id.* at ¶ 6.)  Free Green Can licenses its registered trademarks to Plaintiff FGC Franchises, LLC ("FGC Franchises"), who in turn sub-licenses the trademarks to Free Green Can franchises.  (*Id.*)

Defendant Green Recycling Enterprises, LLC ("GRE") is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska.  (*Id.* at ¶ 7.)  Defendants Edward Jarzobski, Dedric Gill, Robb Jorgensen, and Brian Gubbels are all members of GRE and Gill is its president.  (*Id.* at ¶¶ 9-12.)  They are also citizens and residents of Nebraska.[2]   (*Id.* at ¶ 7.)  Defendants Gill, Jarzobski and/or Jorgensen approached Free Green Can and proposed to

---

[1] Plaintiffs also assert breach of a consulting and a confidentiality agreement (count IX) and breach of fiduciary duty (count X) against Defendant Aslan Financial Group, Inc. ("Aslan"). The Defendants' Motion to Dismiss did not address either of these claims and, therefore, they will not be addressed in this Memorandum Opinion and Order but will remain viable for future proceedings.

[2] Aslan remains a defendant in this case, but has not been named as a moving party to defendants' motion to dismiss the second amended complaint. The details of Aslan's alleged wrongdoings have already previously been set forth in some detail in this courts January 28, 2011 Memorandum Opinion and Order granting in defendants' motion to dismiss the first amended complaint, and therefore will not be reiterated here. Order Granting Mot. Dismiss Jan. 28, 2011.

acquire franchise rights to the Free Green Can business in Nebraska. (*Id.* at ¶ 31.) In October 2009, Free Green Can and GRE and Defendants Gill, Jarzobski, and Jorgensen executed a franchise agreement that contained a forum selection clause providing that:

> "[a]ny legal action or proceeding with respect to this Agreement shall be brought exclusively in state or federal court in Chicago, Illinois and each Party consents to the jurisdiction of said court as the proper and convenient forum for all matters that arise under this Agreement." (Dkt. No. 100, Ex. A.)

The preamble to the franchise agreement states that the agreement was entered into by and between Free Green Can Products, LLC and "the individual or business entity indentified in the signature block of this Agreement ("Franchisee")." (*Id.*) Green Recycling Enterprises, Inc. was listed in the signature block as the Franchisee. (*Id.*) Defendants Gill, Jorgensen, and Jarzobski signed the franchise agreement without indicating their corporate affiliation. (*Id.*) Steve Holland executed the franchise agreement on behalf of Green Can Products, LLC in his capacity as its president. (*Id.*)

After the franchise agreement was executed, Free Green Can received the initial $125,000 initial fee owed under the agreement. (Sec. Am. Compl ¶ 38.) The initial fee included the cost for 100 of the Free Green Can proprietary dual purpose recycle and trash containers. (*Id.*) Free Green Can was also paid $40,000 for an additional 100 dual purpose containers. (*Id.*) Defendant Jorgensen allegedly funded these initial payments to Free Green Can. (*Id.* at ¶ 39.)

After purchasing the dual purpose containers, GRE allegedly placed these bins in several venues and secured advertising commitments from major organizations. (*Id.* at ¶ 41.) However, the GRE Defendants allegedly violated the franchise agreement by failing to pay Free Green Can the advertising fees due under the franchise agreement. (*Id.*) Additionally, the GRE Defendants failed to report on the placement and solicitation of the dual purpose bins, submit financial

statements to Free Green Can and permit Free Green Can to inspect their financial books and records. (*Id.* at ¶ 42.) Nevertheless, plaintiffs allege that GRE Defendants have used the Free Green Can trademarks, have represented themselves as having the right to sell franchises and have provided the proprietary dual purpose bins to a third-party outside of Nebraska. (*Id.* at ¶ 45.) In July 2010, Free Green Can advised Gill, Jarzobski and Jorgensen that these actions constituted an Event of Default and were grounds for terminating the franchise agreement. (*Id*. at ¶ 44.) In response, GRE Defendants informed Free Green Can that the franchise agreement was null and void because Free Green Can did not register its franchise with the Nebraska Department of Banking. (*Id.* at ¶ 45.) Also around this time, Defendant Gubbels became a director and member of GRE. (*Id.* at 43). By written notice, Free Green Can denied the franchise agreement was a nullity and demanded the GRE Defendants comply with the agreement. (*Id.* at ¶ 46.) Plaintiffs also provided the GRE Defendants with notice that their acts infringed Free Green Can's trademarks. (*Id.*) In response, GRE Defendants again claimed that the franchise agreement was null and void. (*Id*. at ¶ 47.)

Additionally, Plaintiffs further allege that the Individual Defendants are now doing business under a new name, Second Nature Public Recycling, ("Second Nature"), and continue to use Free Green Can copyrighted information to operate their business. (*Id*. at ¶¶ 50-57.)

On September 10, 2010, Plaintiffs filed their original Complaint after the GRE Defendants allegedly refused to comply with the franchise agreement and continued to infringe Plaintiffs' trademarks. (Dkt. No. 1.) Plaintiffs filed their First Amended Complaint one month later on October 14, 2010. (Dkt. No. 23.) Aslan and the GRE Defendants sought and obtained dismissal of that complaint because this Court found that: (1) the Plaintiffs failed to allege sufficient facts to establish subject matter jurisdiction over both the claims against Defendant

Aslan and over the contract claims against the Individual Defendants and (2) the Plaintiffs' allegations of trademark infringement and unfair competition were insufficient to state a claim against the Individual Defendants. (Dkt. No. 31.)

In response, the Plaintiffs filed the second amended complaint in an effort to repair the deficiencies contained in the first amended complaint. (Dkt. No. 79.) The Moving Defendants, however, seek dismissal of counts I-VIII of the second amended complaint alleging that, it, again, fails to state a claim upon which the Court can grant relief. (Dkt. No. 92.) Additionally, Defendant Gubbels moves to dismiss the second amended complaint for lack of personal jurisdiction. (*Id*.)

## STANDARD OF REVIEW

**1. Failure to State a Claim**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Christensen v. County* of Boone, 483 F.3d 454, 458 (7th Cir. 2007). Pursuant to the federal notice pleading standard, a complaint need only provide "a short and plain statement of the claim" showing that the plaintiff is entitled to relief and sufficient to provide the defendant with fair notice of the claim and its basis. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In order to withstand a motion to dismiss under 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, the complaint need not set forth "detailed factual allegations," but it must plead facts that "raise a right to relief above the

speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As such, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp.*, 550 U.S. at 555.

### 2. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, a court accepts all well-plead allegations in the complaint as true unless controverted by the defendants' affidavits. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations ommited). While a complaint "need not include facts alleging personal jurisdiction," once a defendant moves to dismiss under 12(b)(2), "plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id*.

This Court has jurisdiction over a defendant only if an Illinois state court would have jurisdiction. The exercise of jurisdiction in Illinois must comply with the Illinois long-arm statute, the Illinois Constitution, and federal due process. *See, e.g., Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760-61 (7th Cir. 2008). The Illinois state statute the provides that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-2-9(c). Additionally, the Seventh Circuit has opined that there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction. Therefore, district courts often proceed directly to the federal due process analysis. *Id.*; *see also Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2003); 735 ILCS § 5/2-209(c) (West 2011). Federal due process requires that a nonresident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice'" *Hyatt*, 302 F.3d at 716 (quoting *Int'l Shoe Co., v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.ED 95 (1945)) (additional citations omitted). Depending on the nature of a defendant's minimum contacts, a court can assert either "general" or "specific" jurisdiction. *International Medical Group, Inc. v. American Arbitration Assoc., Inc*. 312 F.3d 833, 846 (7th Cir. 2002). General jurisdiction is proper when the defendant has had "continuous and systematic contacts" with the state in question. *Hyatt Int'l Corp.,* 302 F.3d at 713. In the absence of general jurisdiction, courts may exercise specific jurisdiction in cases where the "litigation arises out of or is related to the defendant's contacts with the forum state." *Hyperquest Inc., v. NuGen I.T., Inc.* 627 F.Supp. 2d 884 (N.D. Ill. 2008) (citing *Logan Productions Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir. 1996).

## DISCUSSION

In ruling upon this motion to dismiss, the Court will first determine whether the complaint fails to state a claim upon which relief may be granted. The court will, then consider whether this Court has personal jurisdiction over Defendant Gubbels.

**1.  Plaintiffs' Fail to State a Claim Against the Individual Defendants on Counts I, II, and VIII of the Second Amended Complaint.**

In counts I and II, plaintiffs assert trademark infringement and unfair competition claims against the Individual Defendants for violating section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). In count VIII, plaintiffs also assert that the Individual Defendants violated the Illinois Trade Secret Act. The Individual Defendants are all members and officers of Defendant GRE, Inc. ("GRE"). Under Illinois law, officers of a corporation are only liable for the torts of the corporation in which they actively participate. *People ex rel. Madigan c. Tang.*, 356 Ill. App. 3d 264, 284 (Ill.App.Ct. 2004). Therefore, to survive a motion to dismiss, by the Individual

Defendants, plaintiffs must allege that each of the officers directly and personally engaged in the conduct alleged. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421-22 (7th Cir. 1994). More specifically, the complaint must contain allegations showing the officers' active participation in, or the exercise of specific control over the wrongful acts. Id. at 422.

Although trademark infringement is a tort, *Honeywell, Inc. v Metz Apparatewerke*, 509 F.2d 1137, 1141 (7th Cir. 1975), the Court of Appeals for the Seventh Circuit has applied a stricter standard for holding a corporate officer liable for direct infringement. The Seventh Circuit has held that officers are held liable only if they personally, knowingly and willfully participated in the infringing activity. *Panther v. Pumps and Equipment Co., v. Hydrocroft, Inc.* 468 F.2d 225, 233 (7th Cir. 1972) (citing *Dangler v. Imperial Machine Co.,* 11 F.2d 945, 946-48 (7th Cir. 1926). Therefore, in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction. *Dangler v. Imperial Machine Co.,* 11 F.2d 945, 946-48 (7th Cir. 1926). In its Order dated January 28, 2011, this Court dismissed the plaintiffs' trademark infringement and unfair competition claims for failing to allege acts demonstrating this level of active participation by any of the Individual Defendants. Order Granting Mot. Dismiss Jan. 28, 2011.

Here, plaintiffs again have failed to assert any factual allegations that plausibly suggest that the Individual Defendants willfully and deliberately infringed Free Green marks in their individual capacities. Instead, the facts alleged in the second amended complaint are very similar to those already deemed insufficient in the previously filed complaint. The plaintiffs distinguish the second amended complaint from the first amended complaint by replacing the defined term of "GRE Defendants" and with a repetitive list of the individuals that comprise the GRE Defendants. The second amended complaint also states one new set of facts, namely that the

Individual Defendants remain officers of GRE and are doing business under a new trade name, Second Nature, which uses the plaintiffs' copyrighted information to conduct its business. Plaintiffs have failed, however, to offer any additional facts that plausibly suggest that the Individual Defendants exercised willful and specific control over the wrongful acts alleged.

Instead, plaintiffs argue that by replacing the general term GRE Defendants with the names of the Individual Defendants, they have gone further than plaintiffs in *QSRSOFT, Inc. v. Rest. Tech. Inc.,* No. 06 C 2734, 2006 U.S. Dist. LEXIS 80729 (N.D. Ill. Nov. 2, 2006) *1, who prevailed against a motion to dismiss by using the term "QSR Defendants" to state a claim against individual officers as well as the corporate entity. In *QSRSOFT*, the court held that failing to identify each individual defendant did not impact the significance of the plaintiffs' claims, because the plaintiff provided sufficient factual allegations related to all the defendants. *Id.* at 3. Additionally, the court held that the claims alleged against each defendant provided defendants with sufficient notice of the claims against them. *Id.*

Here, unlike in *QSRSOFT*, nowhere in the second amended complaint do plaintiffs offer sufficient facts that suggest that the Individual Defendants were acting outside the scope of their corporate duties or exercising specific control over the wrongdoing alleged. While the plaintiffs' facts do suggest that the Individual Defendants were involved in the tortious acts, they do not suggest the type of willful conduct committed outside the scope of the Individual Defendants' corporate duties that is necessary for individual liability for infringement. *See Jones Day v. Blockshopper L.L.C.,* 2008 WL 4925644, at *5, (N.D. Ill 2008) (quoting *The Drink Group, Inc. v. Gulfstream Communications*, *Inc.*, 7 F.Supp.2d 1009, 1010-11 (N.D. Ill 1998) (holding that allegations that an individual or officer was the 'principal of' and 'driving force behind' allegedly infringing activities of corporate defendant are insufficient to state a claim against

officers). Therefore, plaintiffs' statements are insufficient to state a claim against the Individual Defendants.

### 2. Plaintiffs Fail to State a Claim Against the Individual Defendants on Counts III Through VII of the Second Amended Complaint.

In counts III through VII, Plaintiffs assert various contract claims against the Individual Defendants arising from the Individual Defendants' participation in the franchise agreement. Corporate officers are not generally held liable for a corporation's contractual obligations solely by their association with the corporation. See *Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993). It is well known that corporations operate through their officers and directors, and those agents must be able to exercise business judgment without the constant threat of personal liability. See *Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1993).

Here, however, plaintiffs argue that the Individual Defendants *should* be held liable for wrongdoings committed under the franchise agreement based on their belief that the Individual Defendants entered into the franchise agreement in their individual capacities. Plaintiffs' belief stems from allegations that the Individual Defendants, Jarzobski, Gill, and Jorgensen solicited the plaintiffs to grant the defendants franchise rights, negotiated the terms of the franchise agreement without using corporate formalities, and signed the franchise agreement without indicating their official capacities or corporate titles.

In support, plaintiffs rely on several cases that hold individual defendants liable under contracts that defendants executed in their individual capacities as opposed to their corporate capacities. The plaintiffs' reliance on these cases, however, is misplaced. In *84 Lumber Co. v. Denni Constr. Co*., 212 Ill. App. 3d 441, 442 (1991), the Court held that two individuals who signed a contract under the designation "Applicant" were personally liable on the contract. *Id*. at 443. The Court rejected the argument that the defendants were signing on behalf of their

company, Denni Construction, because, the contract included language that said, "Applicant agrees that he will be personally responsible and liable" under the contract. *Id*. Also, there was no indication within the agreement that Denni Construction was a party to the contract. *Id.* at 443.

In *Jubber v. Sleater*, 404 B.R. 929 (D. Utah Bankr. 2009) and *Lustig v. Brown*, 2004 WL 2095667, at *1 (N.D. Ill Sept. 16, 2004), the court also upheld claims against individual defendants for failure to demonstrate that they were acting on behalf of a corporation in their official capacities. In *Jubber*, the court held that an individual who signed only his name on two notes as the "maker" of the notes was liable for repaying them because there was no indication that he had signed the notes in his official capacity. Also, the court relied on the fact that the Utah Uniform Commercial Code defines "maker" as a "person who signs or is identified in a note as a person undertaking to pay." Id. at 940. Lastly, in *Lustig*, the court held that because at no time did the defendant indicate that she was acting on behalf of another nor did the contract between the parties indicate that the defendant maintained a corporate status, defendant's motion to dismiss for failing to state a claim against her in her individual capacity was denied. *Lustig*, 2004 WL 2095667, at *3.

Here, the defendants' intention to enter the franchise agreement on behalf of GRE is clear. As defendants pointed out, unlike the contracts in *84 Lumber*, *Jubber* and *Lustig*, the opening paragraph of the franchise agreement provides that "this Agreement is made and entered into. . . by and between [Free Green Can as Free Green Can Products, LLC]. . . and the individual or business entity identified in the signature block of this agreement ("Franchisee")." (Franchise Agmt., attached as Ex. A to Dkt. No. 100, at 1.) Then, on page 11 of the agreement, the signatory block specifically identifies "Green Recycling Enterprises, Inc." as the franchisee

with Dedric H. Gill designated as the Franchisee contact. *Id.* at 11. Further, there is no other additional language in the document or on the agreement's signature block that indicates that the Individual Defendants intended to be the Franchisee to the agreement. Thus, while in isolation, failing to include corporate titles on the signature block is somewhat ambiguous, when viewing the Franchise Agreement in its entirety, the defendants' intent to have GRE serve as the Franchisee is apparent. Because the plaintiffs have failed to allege any other facts that plausibly suggest that the Individual Defendants signed the franchise agreement in their individual capacities, plaintiffs have failed to sufficiently state a claim against the Individual Defendants for breach of the franchise agreement.

3. **Plaintiffs fail to allege facts sufficient to pierce the corporate veil to hold the Individual defendants liable for wrongdoings committed by GRE.**

In the second amended complaint, the Plaintiffs asked the Court to pierce the corporate veil of GRE to hold the Individual Defendants personally liable for wrongdoings alleged in counts I-VIII of the complaint. Courts are reluctant to pierce the corporate veil and will only do so where: (1) there is such a unity of interest and ownership that separate personalities of the corporation and the individual no longer exist; and (2) where adherence to the fiction of separate corporate existence would promote injustice or inequity. *Int'l Fin. Servs. Corp. v.Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). "To determine whether a unity of interest and ownership exists, Illinois courts consider four factors: (1) failure to maintain adequate corporate records or failure to comply with corporate formalities; (2) commingling of funds or assets; (3) undercapitalization; and (4) failure to maintain an arms-length relationship with related entities." *First Place Bank v. Skyline Funding, Inc.* 2011 WL 3273071, at *1 N.D. Ill, 2011, citing *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 570 (7th Cir. 1985).

Plaintiffs have not alleged the necessary unity of interest between the Individual Defendants and GRE to warrant the Court's piercing of the corporate veil. The second amended complaint alleges that the Individual Defendants directed the actions and decisions of GRE, engaged in business without regard to corporate formalities and that Defendant Jorgensen made significant financial investments in GRE due to the corporation's undercapitalization. Plaintiffs, however, have not alleged any additional facts to support these conclusory allegations. Instead, the allegations are formulaic recitations of two of the elements of an alter ego cause of action. Without additional factual support, the allegations do nothing more than suggest that the Individual Defendants were serving as active officers of a small company. Further, plaintiffs have not even begun to allege any facts that plausibly suggest that the Individual Defendants failed to maintain corporate records, commingled their funds or assets with GRE or treated GRE assets as their own. Thus, plaintiffs have failed to raise their alter ego claims beyond the speculative level. As such, the Court denies Plaintiffs' request to pierce the corporate veil and hold the Individual Defendants personally liable for counts I-VIII under an alter ego theory.

  **4. Plaintiffs Fail to Allege Facts Sufficient to Subject Individual Defendant Gubbels to Personal Jurisdiction.**

Plaintiffs allege that Defendant Gubbels is subject to specific jurisdiction in Illinois. For a court to determine that specific personal jurisdiction exists, first the plaintiff must demonstrate that the defendant has purposefully established minimum contacts with the forum state such that he would reasonably anticipate being haled into court. *Hyatt*, 302 F.3d at 716 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the suit must be related to or arise out of those contacts. *Id.* Accordingly, "Specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of the general relationship

between the parties, [. . .]." *RAR, Inc. v Turner Diesal, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997).

Here, defendants first argue that Defendant Gubbels should not be subject to personal jurisdiction in this Court because plaintiffs have abandoned their claims against him. This Court agrees. Previously, in its January Order, this Court held that it was proper to exercise personal jurisdiction over the Individual Defendants based on their participation in the franchise agreement. Order Granting Mot. Dismiss Jan. 28, 2011. Defendants correctly noted, however, that Defendant Gubbels has never been a party to the franchise agreement nor was he a member of GRE at the time this agreement was made. Given this fact, in their original motion to dismiss, defendants challenged the inclusion of Gubbels as a defendant. Def. Mot. Dismiss ¶ 6, fn. 2. In their reply brief, plaintiffs failed to respond to defendants' challenge. Plaintiffs' Mem. in Opp. to Mot. Dismiss. By failing to address the defendants' opposition of Gubbles' inclusion in this matter in their original response, plaintiffs have effectively abandoned their claims against him. *Steen v. Myers*. 486, F.3d 1017, 1020 (7th Cir. 2007).

Further, plaintiffs have also failed to establish that Gubbels has had sufficient contacts with the State of Illinois that would subject him to personal jurisdiction. Plaintiffs argue that *Interlease Aviation II (Aloha), LLC v. Vanguard Airlines, Inc.,* 262 F.Supp 2d 898 (910 (N.D. Ill. 2003) and *Celozzi v. Boot*, No. 00 C 3285, 2000 U.S. Dist. LEXIS 11768 , at *1 (N.D. Ill. Aug. 10, 2000) stand for the proposition that even where all other conduct takes place elsewhere, specific jurisdiction is proper in Illinois if the injury transpires in Illinois. Thus, plaintiffs conclude that because Defendant Gubbels' alleged conduct caused injury to an Illinois corporation, jurisdiction in this Court is proper. Plaintiffs, however, have overlooked that each of the aforementioned cases also relied on the principle that "where the injury is economic, the plaintiff must additionally demonstrate an intent to affect Illinois interest" to establish personal

jurisdiction. *Vanguard*, 262 F.Supp. 2d at 910; *Celozzi*, 2000 U.S. Dist. LEXIS, at *3. In *Vanguard* and *Celozzi*, both courts found that the defendants held the requisite intent to affect Illinois interest because, in both cases, defendants repeatedly communicated and collaborated with plaintiffs, and this communication enabled the both defendants to conduct the fraudulent activity alleged. *Vanguard*, 262 F.Supp. 2d at 911; *Celozzi*, 2000 U.S. Dist. LEXIS, at *3.

Here, plaintiffs do not allege any facts that suggest Defendant Gubbels personally connected with the plaintiffs or the State of Illinois whatsoever, let alone engaged in any actions that demonstrated his intent to affect Illinois interest. Accordingly, the second amended complaint fails to properly allege that Defendant Gubbels has established sufficient minimum contacts with the state so as to subject himself to personal jurisdiction..

Because the Court determined that it does not have personal jurisdiction over Defendant Gubbels for the reasons stated above, the Court does not need to consider defendants' argument that the fiduciary shield doctrine precludes the Court from exercising personal jurisdiction over Defendant Gubbels as well.

*[signature]*